IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JAMES R. BENNINGTON, | ) Civil Action No. 3:04-2417-JFA-JRM |
| Plaintiff, | ) |
| vs. | ) |
| GEORGE GINTOLI; W. RUSSELL HUGHES, IN THEIR PERSONAL CAPACITIES; AND SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH, FOR INJUNCTIVE RELIEF, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendants. | ) |

Plaintiff filed this action under 42 U.S.C. § 1983 ("§ 1983") on July 23, 2004.[1] He has been involuntarily committed to the South Carolina Department of Mental Health ("SCDMH") as a Sexually Violent Predator ("SVP") pursuant to the South Carolina Sexually Violent Predator Act ("SVP Act"), S.C. Code Ann. § 44-48-10 et seq. Plaintiff is in the Behavioral Disorders Treatment Program ("BDTP"). Defendants are the South Carolina Department of Mental Health ("SCDMH"); SCDMH Director George Gintoli ("Gintoli"); and Russell Hughes ("Hughes"), the Chief Executive Officer of Columbia Behavioral Health Systems.[2] On January 5, 2005, Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was

---

[1] This action was originally filed on July 23, 2004, by four persons civilly committed to the custody of the South Carolina Department of Mental Health (Civil Action 3:04-2322-JFA-JRM). On July 27, 2004, the undersigned ordered that Kris Sarayn Kollyns remain as the sole plaintiff in the lead action and separate civil action numbers be assigned to the other plaintiffs.

[2] Gintoli and Hughes provide that their salaries are paid by the State of South Carolina. Defendants' Motion for Summary Judgment, at 5.

advised on January 7, 2004, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. On February 7, 2005, Plaintiff filed an affidavit in opposition to summary judgment. Defendants filed a supplemental motion for summary judgment on March 31, 2005.

## MOTION FOR DEFAULT

On December 2, 2004, Plaintiff filed an application for court entry of default against Defendants. Return of service was executed as to the SCDMH and Gintoli on October 25, 2004, and as to Hughes on October 26, 2004. See Returns of Service filed in Civil Action Number 3:04-2322-JFA-JRM.[3] Plaintiff has not shown that Defendants, who have timely appeared and defended this action, are in default. See Fed. R. Civ. P. 55. It is, therefore, recommended that Plaintiff's motion for default be denied.

## MOTIONS TO STRIKE/MOTION FOR SANCTIONS

On December 2, 2004, Plaintiff filed a motion to strike Defendants' answer. He argues that the answer "fails to state a claim to which relief can be granted" and "has no prayer for relief." On February 7, 2005, Plaintiff filed a motion to strike Defendants' motion for summary judgment and memorandum in support of their motion for summary judgment. Plaintiff argues that his motions should be granted because Defendants have filed deliberately erroneous interpretations of controlling law, half truths, and misleading affidavits. On February 7, 2005, Plaintiff filed a motion for sanctions. He argues that Defendants deliberately filed their motion

---

[3] A single summons was issued for the four cases on October 14, 2004. It appears that the return of service was only filed in the lead case.

for summary judgment to cause harassment and delay and the defenses asserted are not warranted by existing law.

Under Rule 12(f) of the Federal Rules, the court may strike "from any pleading any insufficient defense." The striking of such defenses is a proper means of expediting legal proceedings. See, e.g., United States v. 416.81 Acres of Land, 514 F.2d 627 (7th Cir.1975); Klemens v. Air Line Pilots Ass'n Int'l, 500 F. Supp. 735 (W.D.Wash.1980). A defense is insufficient "if it is clearly invalid as a matter of law." Anchor Hocking Corp. v. Jacksonville Electric Auth., 419 F. Supp. 992, 1000 (M.D.Fla.1976). A motion to strike is a severe measure and it is generally viewed with disfavor, because it is difficult to establish that a defense is clearly insufficient. A Rule 12(f) motion should not be granted if there is a substantial question of fact or a mixed question of law and fact that cannot be resolved, even if it is possible to determine the issue by drawing inferences from acts and statements that are not disputed. A motion to strike should not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1381 (3d ed. 2004); see also United States v. 187.40 Acres of Land, 381 F. Supp. 54, 56 (M.D. Pa. 1974).

Plaintiff fails to show that the defenses asserted by Defendants are clearly invalid as a matter of law. Additionally, he has not shown that sanctions are warranted in this case. It is, therefore, recommended that Plaintiff's motions to strike and his motion for sanctions be denied.[4]

---

[4]The undersigned has treated Plaintiff's arguments and materials submitted with these motions as materials in opposition to Defendants' motion for summary judgment.

## MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges that his Eighth and Fourteenth Amendment rights were violated because he is required to pay for eyeglasses or go without them. He requests injunctive relief and monetary damages. Defendants argue that they are entitled to summary judgment because: (1) Plaintiff fails to state an Eighth Amendment claim as he is not incarcerated; (2) Plaintiff cannot make out a § 1983 claim against Gintoli or Hughes because neither are "persons" as defined under § 1983 and thus cannot be held liable in their official capacities; (3) Defendants are entitled to Eleventh Amendment Immunity; and (4) Gintoli and Hughes are entitled to qualified immunity. In their supplemental motion for summary judgment, Defendants argue that Plaintiff's claims should be dismissed for lack of standing.

    A.    <u>Medical Claims</u>

Plaintiff alleges that his constitutional rights have been violated because Defendants have not provided him with free eyeglasses. Defendants argue that Plaintiff's claim fails because SVPs who are involuntarily committed to the SCDMH are provided any and all medical services without regard to their ability to pay, although those who have the ability to pay for certain medical devices are required to do so. Defendants provide that Plaintiff wears eyeglasses that were prescribed before any determination as to his ability to pay was made and SCDMH residents are provided the opportunity for extra employment at minimum wage to purchase non-essential, but medically recommended, items.

Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. <u>Youngberg v. Romeo</u>, 457 U.S. 307, 324 (1982). Due process requires that the conditions and duration of confinement under the SVP Act bear some reasonable relation to the purpose for which persons are committed.

See Seling v. Young, 531 U.S. 250, 265 (2001); Youngberg v. Romeo, supra. The Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from obtaining medical care on his own. DeShaney v. Winnebago, 489 U.S. 189, 200 (1989); Youngberg, 457 U.S. at 324.[5]

In deciding whether a civilly-institutionalized individual's constitutional rights have been violated, the courts must balance the individual's liberty interest against the relevant state interests, but deference must be given to the decisions of professionals. Youngberg, 457 U.S. at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323. Deference to professionals ensures that federal courts do not unnecessarily interfere with the internal operations of state institutions. Id. at 322.

To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence in diagnosing and treating medical complaints. Patten v. Nichols, 274 F.3d 829 (4th Cir. 2001). While courts have not adopted a consistent standard, there is agreement that the professional judgment standard requires more culpability than mere negligence. Compare Yvonne L. v. New Mexico Dep't of Human Servs., 959 F.2d 883, 894 (10th Cir.

---

[5]The Eighth Amendment deliberate indifferent standard applies to convicted prisoners. To establish a constitutional violation under that standard, a plaintiff must show that prison officials were deliberately indifferent to a serious medical need. See Farmer v. Brennan, 511 U.S. 825 (1994); Estelle v. Gamble, 429 U.S. 97 (1976). Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need). See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)(citing Estelle v. Gamble, 429 U.S. 97 (1976)).

1992)(doubting whether "there is much difference" between the deliberate indifference standard and the Youngberg standard), with Doe v. New York City Dep't of Soc. Servs., 709 F.2d. 782, 790 (2d Cir. 1983)(stating that in Youngberg, "the Court adopted what is essentially a gross negligence standard"); see also Shaw v. Strackhouse, 920 F.2d 1135, 1146 (3d Cir. 1990)("Professional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct.").[6]

Plaintiff has not shown that Defendants violated the professional judgment standard. Rebecca Smith ("Smith"), a nurse administrator at the BDTP, and Brenda Young-Rice ("Young-Rice"), the Director of the BDTP, state that Plaintiff regularly sees a medical doctor; he has not been denied any type of medically necessary service or item because of any inability to pay; if a resident cannot pay for a medically necessary item it is supplied to the resident and the cost is recovered from his account when and if funds become available; and residents are given the opportunity to take on extra employment at minimum wage to purchase non-essential, but medically recommended items. Smith and Young-Rice Affs. Smith states that Plaintiff received an eye appointment and glasses in 2001, but when money was to be deducted from his account to pay for the glasses he returned them. He was taken to the eye clinic and given glasses in 2003. Smith Aff. In his February 7, 2005 affidavit, Plaintiff states that it was not mentioned prior to his

---

[6]Although it is unclear what constitutes failure to meet the professional judgment standard, it is at least co-extensive with deliberate indifference as discussed above. In certain circumstances, the failure to provide hearing aids and comparable basic corrective/medical devices may amount to deliberate indifference to a serious medical need. See Large v. Washington County Det. Ctr., 915 F.2d 1564 (4th Cir. 1990)(unpublished); Newman v. Alabama, 503 F.2d 1320, 1331 (5th Cir. 1974) (failure to provide eyeglasses and prosthetic devices can constitute deliberate indifference), cert. denied, 421 U.S. 948 (1975); Hunt v. Dental Dep't, 865 F.2d 198 (9th Cir. 1989) (loss of dentures for three months and prison officials' failure to take any action to relieve prisoner's pain or to prescribe a soft food diet until new dentures could be fitted stated a claim of deliberate indifference).

receipt of his glasses that he would be responsible for all or any part of the glasses, he did not receive glasses in 2003 because he was told his prescription did not need to be changed, and during his eye exam on January 12, 2005 he was told that he had not received glasses in 2003. Plaintiff's Aff. There is no indication, however, that Plaintiff did not have a pair of glasses or that he was not able to obtain glasses.

      B.      <u>Trust Fund Accounts</u>

It is unclear, but Plaintiff also appears to assert that Defendants violated his constitutional rights by debiting his trust account for the cost of medical services. Defendants argue that Plaintiff lacks standing to sue for charges for any medical services.

Plaintiff lacks standing to bring an action based on the debiting of his trust account. Karl Boston, Client Banking Supervisor for the SCDMH, states that no money has been deducted from Plaintiff's account. He states that a hold can be put on funds to pay for medical services, but these funds are released back to the resident if he does not sign a permission form, Form F-22, authorizing the SCDMH to deduct the funds for the service. Plaintiff's trust account shows that he had numerous cash deposits during the relevant time period. Boston Aff., Plaintiff's Detailed Account Ledger.

Further, although Defendants may have a duty to provide certain medical care for Plaintiff, the Constitution does not dictate the allocation of such costs. See <u>Revere v. Massachusetts Gen. Hosp.</u>, 463 U.S. 239, 245 n. 7 (1983) (in action by hospital against city for cost of medical services rendered to person shot by police officer; stating "nothing we say here affects any right

a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him.").[7]

Additionally, negligent deprivations of personal property do not support an action for damages under 42 U.S.C. § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986). Furthermore, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  DeShaney, 489 U.S. at 200-203.

The United States Court of Appeals for the Fourth Circuit has held that a federal district court should deny § 1983 relief if state law provides a plaintiff with a viable remedy for the loss of personal property--even if the deprivation was caused by an employee of the state, an employee of a state agency, or an employee of a political subdivision of a state.  Yates v. Jamison, 782 F.2d 1182, 1183-84 (4th Cir. 1986).  Yates has been partially superannuated for cases where plaintiffs allege deprivations of intangible interests, such as a driver's license or "liberty."  See Plumer v. Maryland, 915 F.2d 927, 929-32 & nn. 2-5 (4th Cir. 1990) and Zinermon v. Burch, 494 U.S. 113 (1990).  Nevertheless, the holding in Yates is still binding on lower federal courts in the Fourth Judicial Circuit in cases involving deprivations of personal property.

Under South Carolina law, Plaintiff's claims may be cognizable under the South Carolina Tort Claims Act, § 15-78-10 et seq., S. C. Code Ann.  Section 15-78-30 and its subparts encompass a "loss" of property from an occurrence of negligence proximately caused by a person

---

[7]Defendants argue that the SCDMH may charge for the maintenance and medical care for patients of state mental health facilities pursuant to South Carolina Code Ann. § 44-23-1110("The Department of Mental Health shall establish the charges for maintenance and medical care for patients, other than beneficiary, of State mental health facilities."). "'Patient' means any person who seeks hospitalization or treatment under the provisions of [Chapter 23], Chapter 9, Chapter 11, Chapter 13, Article 1 of Chapter 15, Chapter 17 and Chapter 27, or any person for whom such hospitalization or treatment is sought." S.C. Code Ann. §44-23-10.  Thus, it is unclear whether this provision applies to Plaintiff, who is involuntarily committed under Chapter 48 (pertaining to SVPs) of the South Carolina Code.

employed by the State of South Carolina, a state agency, or political subdivision while acting within the scope of his or her employment. Under the South Carolina Tort Claims Act, a claimant is required to file an administrative claim with the agency, department, or the State Budget and Control Board before seeking judicial relief in a Court of Common Pleas. See S.C. Code Ann. § 15-78-80. South Carolina case law indicates that claimants under the South Carolina Tort Claims Act must strictly comply with its requirements and must timely pursue their claims before the applicable limitations period expires. See, e.g., Murphy v. Richland Memorial Hosp., 455 S.E.2d 688 (S.C. 1995); and Pollard v. County of Florence, 444 S.E.2d 534 (S.C.Ct. App. 1994).

Cases from other circuits point out that the availability of a state cause of action for an alleged loss of property provides adequate procedural due process. In other words, where state law provides such a remedy, no federally guaranteed constitutional right is implicated. See King v. Massarweh, 782 F.2d 825, 826 (9th Cir. 1986); Slaughter v. Anderson, 673 F. Supp. 929, 930 (N.D.Ill. 1987). Plaintiff has an available judicial remedy for the missing property: the South Carolina Tort Claims Act, supra.

C.  Immunity

Defendants argue that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants Gintoli and Hughes also argue that they are entitled to qualified immunity[8] in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

---

[8] Gintoli and Hughes first argue that they are only being sued in their official capacities because Plaintiff has stated no allegations against them personally. Defendants' Motion for Summary Judgment at 6-7. Plaintiff, however, stated in the caption of his complaint that Gintoli and Hughes are sued in their personal capacities. Defendants should further note that this issue was addressed in the October 6, 2004 Order of the Honorable Joseph F. Anderson, Jr., Chief United States District Judge, District of South Carolina. Gintoli and Hughes alternatively argue that they are entitled to qualified immunity.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Gintoli or Hughes violated any of his clearly established constitutional or statutory rights. Therefore, Defendants Gintoli and Hughes are entitled to qualified immunity in their individual capacities.

## CONCLUSION

Based on review of the record, it is recommended that Plaintiff's motion for default judgment (Doc. 13) be denied; Plaintiff's motions to strike (Docs. 12 and 18) be denied; Plaintiff's motion for sanctions (Doc. 17) be denied; and Defendants' motion for summary judgment (Doc. 14) be granted.

> Respectfully submitted,
>
> s/Joseph R. McCrorey
> United States Magistrate Judge

August 23, 2005
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201